## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

JACK MILLER, ANNABEL CAMPBELL, MATTHEW PESINA, LISA PESINA, M.P., a minor, and J.G., a minor,

          *Plaintiffs,*

v.

CHIEF JOSEPH SALVAGGIO, in his individual and official capacities, OFFICER JIM WELLS, in his individual and official capacities, OFFICER ANDERSON, in his individual and official capacities, OFFICER SAUCEDO, in his individual and official capacities, OFFICER J. VASQUEZ, in his individual and official capacities, STATE POLICE OFFICER JOHN DOE, in his individual and official capacities, BEXAR COUNTY MAGISTRATE, in their individual and official capacities, KIRBY POLICE DEPARTMENT, and LEON VALLEY POLICE DEPARTMENT, jointly and severally,

          *Defendants.*

_____/

Case No. 20-cv-00642-JKP

Hon. Jason K. Pulliam

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' AMENDED MOTION TO DISMISS

NOW COME Plaintiffs, Jack Miller, Annabel Campbell, Matthew Pesina, Lisa Pesina, M.P., a minor, and J.G., a minor, by and through counsel, and file this response to Defendants Salvaggio, Wells, Anderson, Saucedo, and Vasquez's Amended Motion to Dismiss Counts I-V of Plaintiffs' Complaint. (ECF # 8, p. 1-

3).[1] For the reasons stated herein, Plaintiffs respectfully requests this Honorable Court deny Defendants' motion.

Respectfully submitted,

EXCOLO LAW, PLLC

Dated: July 20, 2020     By:   */s/ Solomon M. Radner*
           Solomon M. Radner
           MI Bar No. P73653
           Attorney for Plaintiffs
           26700 Lahser Rd., Suite 401
           Southfield, MI  48033
           (866) 939-2656
           sradner@excololaw.com

---

[1] Defendants only move to dismiss counts I-V of Plaintiffs' Complaint. Accordingly, Plaintiffs will only address the counts listed in Defendants' Amended Motion to Dismiss.

## STATEMENT OF ISSUES PRESENTED

Whether Plaintiffs have alleged sufficient facts to state a claim against Defendant Officers for retaliatory arrest, unlawful entry, excessive force, and malicious prosecution where Defendant Officers, among other things, procured a warrant based on knowingly false statements and in retaliation for constitutionally protected conduct and executed said warrant with excessive and unreasonable force.

## STATEMENT OF LEGAL AUTHORITIES PRESENTED

Defendant Officers are not entitled to dismissal because the "[t]he pleadings on their face show an unreasonable violation of a clearly establish constitutional right, [and therefore] the defense of qualified immunity will not sustain a motion to dismiss under Rule 12(b)(6)." *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), overruled in part on other grounds by *McClendon v. City of Columbia*, 305 F.3d 314, 329 (5th Cir. 2002).

The sufficiency of Plaintiffs' pleadings is governed by Fed. R. Civ. P. 8(a)(2) and Fed. R. Civ. P. 12(b)(6).

Authority for making a claim for violations of the First and Fourth Amendment retaliatory arrests without probable cause can be found in *Kennan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002) and *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019).

Authority for making a claim for Fourth Amendment violations based on false statements made in the procurance of a warrant can be found in *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2657 (1978), *Hale v. Fish*, 899 F.2d 390 (5th Cir. 1990), and *Hart v. O'Brien*, 127 F.3d 424, 448 (5th Cir. 1997).

Authority for making claims for Fourth Amendment violations based on excessive force during the execution of a search warrant can be found in *Heitschmidt v. City of Houston*, 161 F.3d 834 (5th Cir. 1998), *Okorie v. Crawford*, 921 F.3d 430, 437 (2019), *Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004), and *Flores v. Rivas*, EP-19-CV-297-KC, 2020 U.S. Dist. LEXIS 22047 (W.D. Tex. Jan. 31. 2020).

Authority for making claims for Fourth Amendment violations based on a theory of malicious prosecution can be found in *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018). Authority for making a claim for supervisory liability under 42 U.S.C. § 1983 can be found in *Gates v. Tex. Dep't of Protective &Regulatory Servs.*, 537 F.3d 404 (5th Cir. 2008).

## <u>STATEMENT OF FACTS</u>

In the late afternoon of May 31, 2018, Jack Miller ("Mr. Miller" or "Plaintiff Miller"), was at city hall for the purpose of making a complaint against the police department. (ECF # 1, ¶ 13). Mr. Miller had previously been given a citation for unlawfully possessing a gun despite the reporting officers' knowledge that the gun was indeed fake. (*Id*. at ¶ 15). When he arrived to deliver his complaint against the

police department, he had his fake gun again on his hip and in plain sight. (*Id*. at ¶ 17). Having a fake gun at city hall is not an arrestable offense. (*Id*. at ¶ 18). Defendant Officers knew Plaintiff's gun was fake and thus had no probable cause or reasonable suspicion that Plaintiff had committed any crime. (*Id*. at ¶ 82).

Upon his arrival to city hall, Mr. Miller was searched and "wanded" by security. (*Id*. at ¶ 19). Mr. Miller informed security that he was there to deliver a complaint and security asked him to stand to the side. (*Id*. at ¶ 20-21). Defendants Wells, Anderson, Saucedo, Vasquez and other officers began openly discussing Mr. Miller's complaint. (*Id*. at ¶ 22, 11). Defendant Wells then approached Mr. Miller and asked him to leave with his gun. (*Id*. at ¶ 23). Mr. Miller and Defendant Wells then walked outside and Defendant Wells instructed Mr. Miller to place the gun in his car. (*Id*. at ¶ 24-25). Mr. Miller complied with Defendant Wells instruction. (*Id*. at ¶ 26). Defendant Anderson followed them outside and joined Mr. Miller and Defendant Wells at Mr. Miller's car. (*Id*. at ¶ 27). Mr. Miller insisted that he be able to write a complaint for the officers requiring him to put his fake gun in the car. (*Id*. at ¶ 28). Mr. Miller remained outside with Defendants for 30 minutes while Wells and Anderson mocked him. (*Id*. at ¶ 29). Eventually Mr. Miller requested Defendant Wells get another officer to come outside. (*Id*. at ¶ 30). Defendant Saucedo then exited city hall and received Mr. Miller's complaint. (*Id*. at ¶ 31). Afterwards, Mr.

Miller smoked a cigarette with is friend. (*Id*. at ¶ 32). Mr. Miller arrived at his home around midnight. (*Id*. at ¶ 33).

As soon as Mr. Miller arrived at his home, Defendant Wells, Anderson, Saucedo, Vazquez, as well as officers from the Kirby Police Department and an unidentified State Police Officer, arrived at Mr. Miller's home with a no-knock warrant. (*Id*. at ¶ 34). The officers had a warrant and affidavit in support. (*Id*.). The affidavit contained false statements about Mr. Miller's actions. (*Id*. at ¶ 35-37). At no point did Mr. Miller enter the Leon Valley City court house and, the officers knew, from Mr. Miller's complaints, that the firearm was fake. (*Id*., ¶ 15-21, ¶ 28-30). The warrant was issued a few hours earlier at 10:30PM. (*Id*. at ¶ 38). The warrant permitted Defendant Officers to enter and search Mr. Miller's home for a black semi-automatic hand gun, a Go Pro Camera, any cell phone media devices used to record, computer desktop or laptop, and photographic evidence related to Mr. Miller's alleged armed entry to the Leon Valley City court house. (*Id*. at ¶ 39). Defendant Officers then entered Mr. Miller's home and forcefully pointed their guns at everyone inside, including Plaintiffs Annabel Campbell, Matthew Pesina, Lisa Pesina, and two minor children, M.P. and J.G. (*Id*. at ¶ 40). Mr. Miller was then arrested and charged with possessing a gun on government property. (*Id*. at ¶ 41-44). Mr. Miller was prosecuted for this charge and found not guilty. (*Id*. at ¶ 42). Plaintiffs filed suit on May 28, 2020. (ECF # 1).

4

## STANDARD OF REVIEW

All that is required under the Federal Rules of Civil Procedure is for Plaintiffs to plead "a short and plain statement of the claim showing that [they are] entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement need only provide Defendants "fair notice" of the claims and their respective factual bases. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Specific facts are not necessary." *Inhale, Inc. v. Gravitron, LLC,* 2018 U.S. Dist. LEXIS 223241, at *3 (W.D. Tex. Dec. 10, 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007))

In deciding a motion under Rule 12(b)(6), the Court views the pleadings in a light most favorable to the Plaintiffs and assumes that all facts in Plaintiffs' complaint are true. *Club Retro, L.L.C., v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Finally, motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009).

## LAW & ARGUMENT

I.  DEFENDANT OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEIR CONDUCT AS ALLEGED VIOLATED PLAINTIFFS' CLEARLY ESTABLISHED RIGHTS

"A public official is entitled to qualified immunity unless a plaintiff can show (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Gerhart v. McLendon*, 714 F. Appx. 327, 333 (5th Cir. 2017) (citing *Ashcroft v. al-Kidd*, 563

U.S. 731, 735 (2011). Qualified immunity "is an affirmative defense which must be established by the defendant." *Teladoc, Inc. v. Tex. Med. Bd.*, 2015 U.S. Dist. LEXIS 166754, at *18-19 (W.D. Tex. Dec. 14, 2015) (collecting cases). In this analysis, "the pubic official's state of mind is generally no longer relevant in deciding a claim of qualified immunity." *Floyd v. City of* Kenner, 351 F. Appx. 890, 896 (5th Cir. 2009) (quoting *Tompkins v. Vickers*, 26 F.3d 603, 607 (5th Cir. 1994)). "Nonetheless, [the Circuit] has explained that "motive or intent must be considered in the qualified immunity analysis where unlawful motivation or intent is a critical element of the alleged constitutional violation."" *Floyd*, at 896 (quoting *Tompkins*, at 607). Here, Defendants have not established that they are entitled to qualified immunity for Plaintiffs' claims.

### a. Constitutional Violation – Retaliatory Arrest (Count I-II)

"Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Rodriguez v. Rutter*, 310 F. Appx. 623, 627 (5th Cir. 2009). As directed by the Fifth Circuit, "[c]ourts need to be alert to arrests that are prompted by constitutionally protected speech, even when the arrestee's words are directed at a police officer performing official tasks. Trained officers must exercise restraint when confronted with a citizen's anger over police action." *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008). "[G]overnment

6

retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable." *Brooks*, at 989.

To state a claim for retaliatory arrest, one must allege "that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Kennan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002); *see also*., *Rodriguez v. Rutter*, 310 F. Appx. 623, 627 (5th Cir. 2009) (reversing dismissal of retaliatory citation claim where district court drew inferences regarding the protected conduct in favor of defendant deputies). In addition, a plaintiff must show an absence of probable cause, or, in the alternative, that plaintiff "was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019); *see also*., *Keenan v. Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002) (retaliatory criminal prosecution claims require absence of probable cause).

Here, Plaintiffs' complaint sufficiently states a claim for retaliatory arrest. Plaintiff alleges he was exercising constitutionally protected conduct to make a formal complaint against law enforcement officers and engaging in conduct to audit the department's response to protected conduct. (ECF # 1, ¶ 13-17). In response to

that protected conduct, Plaintiff alleges adverse actions were taken against him where he was instructed to leave and later was subject to a retaliatory arrest, malicious prosecution, and unlawful detainment and entry to his home without probable cause or any exigent circumstance as well as excessive force when the officers pointed loaded guns at everyone in his home without a lawful basis. (*Id.* at ¶ 23-42, 43-84). Finally, Plaintiff alleged sufficient facts to show the adverse actions were taken in response to protected conduct. Previously he had been written a citation despite the officer knowing the gun was fake. (*Id*. at ¶ 15). Plaintiff's complaint specifically alleges that Defendant Officers knew Plaintiff did not have a real gun and thus lacked probable cause to initiate any criminal proceeds. (*Id*. at ¶ 82). Having a fake gun is not an arrestable offense. (*Id*. at ¶ 18). Plaintiff's fake gun was clearly visible on his hip and did not trigger any security alarms when wanded. (*Id*. at ¶ 17, 19-21). Only when Defendant Officers knew and were openly discussing Plaintiff's complaint was Plaintiff asked to leave and only after he made another complaint was a warrant secured for his arrest to charge him with a crime of having a gun (which the officers knew was fake) at the city court house (which doesn't exist). (*Id*. at ¶ 22-36). Taking Plaintiff's allegations as true and making all plausible inferences in Plaintiff's favor, *Club Retro, L.L.C., v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009), Plaintiff has sufficiently stated a claim for retaliatory arrest against Defendant Officers and their motion should be denied.

b.  <u>Constitutional Violation – Unlawful Entry (Count III)</u>

"Physical entry into the home is the chief evil against which the Fourth Amendment is directed." *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 405 n.12 (5th Cir. 2002) (quoting *United States v. United States Dist. Ct.*, 407 U.S. 297, 313 (1972)). "At the very core of the Fourth Amendment and the personal rights it secures stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Id*. (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). "A reasonable officer would know that lying to a judge in order to procure a ... warrant was unlawful." *Hampton v. Oktibbeha County Sheriff Dept.*, 480 F.3d 358, 364 (5th Cir. 2007). Further, the Fifth Circuit has held that "the intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation." *Floyd v. City of Kenner*, 351 F. Appx. 890, 895 (5th Cir. 2009) (quoting *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006)).  Defendant Officers conduct of intentionally procuring a warrant based on knowingly false statements and executing it with excessive force violated this fundamental constitutional right.

"To prevail on a federal claim of unlawful search and seizure, a plaintiff must demonstrate a genuine issue of fact exists as to whether a defendant knowingly provided false information to secure the search warrant or gave false information in reckless disregard for the truth." *Arceneaux v. Louisiana*, 2008 U.S. Dist. LEXIS

45356, at *11-12 (W.D. La. June 6, 2008) (citing *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2657 (1978)). "[I]f an officer, in an affidavit supporting a warrant, makes a false statement knowingly and intentionally, or with reckless disregard for the truth, the false statements must be disregarded in determining whether the affidavit is sufficient to support a finding of probable cause." *Hale v. Fish*, 899 F.2d 390, 400 n. 3 (5th Cir. 1990),[2] (citing *Franks*, 438 at 171-72 (1978)). An officer may be liable for his false statements resulting in a warrant being issued without probable cause "regardless of whether he signed the application or was present when the affiant appeared before the judge." *Michalik v. Hermann*, 422 F.3d 252, 258 n.5 (5th Cir. 2005) (citing *Franks v. Delaware*, 438 U.S. at 155-156); *see also*., *Hart v. O'Brien*, 127 F.3d 424, 448 (5th Cir. 1997) ("Police [can] not insulate one officer's deliberate misstatements merely by relaying it through an officer-affiant personally ignorant of its falsity…a deliberate or reckless misstatement or omission by a governmental official who is not the affiant may nevertheless form the basis of a *Franks* claim.").

Here, Plaintiff's complaint sufficiently states a claim for unlawful entry. Plaintiff alleges that Defendant Officers knew the gun was fake and knew that Plaintiff did not enter a court house. (ECF # 1, ¶ 82, 35-37). With this knowledge Plaintiff alleges that Defendant Officers knowingly procured a no-knock warrant

---

[2] "The holding in *Franks* applies to omissions as well." *Id.*

based on false statements, and proceeded to forcefully enter and search his home in the late hours of the night while holding all occupants at gunpoint, including two minor children. (*Id*. at ¶ 34-42, 58-69). Plaintiff's allegation that Defendant Officers conducted an entry and search of a private home based on a knowingly false warrant sufficiently states a claim for unlawful entry in violation of the Fourth Amendment. *Floyd*, 351 F. Appx. at 895. Disregarding the false statements and omissions, and taking Plaintiff's allegations as true, Plaintiff's possession of what the officers knew to be a fake gun in city hall does not provide probable cause to procure a search warrant to search his home for the fake gun and video camera. *Hale*, 899 F.2d at 400 n.3. No crime was committed to support a finding of probable cause. Further, the presence of a lawfully owned firearm, fake or real, that does not present a threat to the safety of anyone in the home or outside, and does not provide legitimate exigent circumstances permitting a warrantless search and seizure into a private home. *See United States v.* Jones, 239 F.3d 716, 720 (5th Cir. 2001) (non-exhaustive list of factors to assess whether an exigency justifies a warrantless search). Accordingly, Plaintiff has sufficiently alleged a lack of probable cause and thus an unlawful entry in violation of the Fourth Amendment.

### c. Constitutional Violation – Excessive Force (Count IV)

As pronounced by the Fifth Circuit long ago, "[a] police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not

cause *physical* injury, but he has certainly laid the building blocks for a section 1983 claim against him." *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986). Since then, the Fifth Circuit has established that "psychological," and not just physical "injuries may sustain a Fourth amendment claim." *Flores v. City of Palacios*, 381 F.3d 391, 397-398 (5th Cir. 2004). "Any force found to be objectively unreasonable exceeds the de minimis threshold, and, conversely, objectively reasonable force will result in de minimis injuries only." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). Accordingly, the "sufficiency of a plaintiff's injury turns not on the severity of the injury, but on the reasonableness of the officer's use of force." *Scott v. White*, 2018 U.S. Dist. LEXIS 73907, at \*15 (W.D. Tex. Apr. 30, 2018).

In this district, it has been determined that it is "objectively unreasonable for a police officer to forcefully brandish a deadly weapon at citizens whom he could not reasonably have perceived to be dangerous." *Flores v. Rivas*, 2020 U.S. Dist. LEXIS 22047, at \*19-20 (W.D. Tex. Jan. 31. 2020).[3] The officers were not entitled to qualified immunity for such conduct. *See id*. at \*21 (finding precedent sufficiently clear to put officers on notice that it is objectively unreasonable to brandish firearm

---

[3] The court distinguished two Fifth Circuit cases, *Brothers v. Zoss*, 837 F.3d 513, 516-619 (5th Cir. 2016) and *Hinojosa v. City of Terrell*, 834 F.3d 1223, 1230-1231 (5th Cir. 1988), because "in both cases, police officers were confronted with either violent or otherwise non-compliant adults, engaged in suspected criminal behavior." *Flores v. Rivas*, at \*19-20. Unlike those cases, this case does not include facts that Plaintiffs were violent or non-compliant in any manner and Defendant Officers didn't suspect anyone in the home of a crime. Further, two of the Plaintiffs here are minor children.

under circumstances alleged).[4] As summarized by a district court in the case *Bernard v. Maine*, 2019 U.S. Dist. LEXIS 467705, at *23 (D. Me. March 22, 2019), it is established throughout the circuits that an officer's act of pointing weapons at civilians can amount to unconstitutional excessive force under the Fourth Amendment:

> Under certain circumstances, police use of force "may be unreasonable under the Fourth Amendment even if officers do no more than threaten the occupants with firearms." *Terebesi v. Torreso*, 764 F.3d 217, 240 (2d Cir. 2014). "[P]ointing a loaded gun at a suspect, employing the threat of deadly force, is use of a high level of force." *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). "While police are not entitled to point their guns at citizens when there is no hint of danger, they are allowed to do so when there *is* reason to fear danger." *Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009). "The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force. Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1192 - 93 (10th Cir. 2001); *see also*., *Mlodzinski v. Lewis*, 648 F.3d 24, 37 - 40 (1st Cir. 2011) (applying the *Graham* factors to an officer's conduct in pointing a weapon); *Stamps v. Town of Framingham*, 813 F.3d 27, 40 – 41 (1st Cir. 2016) (same).

Further, "[o]ther circuits also have recognized excessive-force claims without physical contact and therefore rejected qualified immunity defenses under circumstances similar to those here." *Merrill v. Schell*, 279 F. Supp. 3d 438, 447-49

---

[4] *See also*., *Manis v. Cohen*, 2001 U.S. Dist. LEXIS 19453, at *24-27 (N.D. Tex. Nov. 28, 2001); *Hodge v. Layrisson*, 1998 U.S. Dist. LEXIS 13930, at *17-19 (E.D. La. Aug. 31, 1998) (denying dispositive motions of officers who hold citizens at gunpoint and point weapons in their face without a lawful basis).

(W.D.N.Y. 2017). "For example, the Seventh and Ninth Circuits have found that pointing a gun at a suspect when he or she does not present any significant danger to officers may constitute an unreasonable use of force under the Fourth Amendment." *Id*. (collecting cases). Similarly, "[o]ther circuits have also held that pointing guns at persons who are compliant and present no danger is a constitutional violation." *Baird v. Renbarger*, 578 F.3d 340, 346 (7th Cir. 2009) (citing *Robinson v. Solano County*, 278 F.3d 1007, 1015-16 (9th Cir. 2002) (en banc) (pointing a gun at an unarmed suspect who poses no  danger constitutes excessive force); *Baker v. Monroe Township*, 50 F.3d 1186, 1193-94 (3d Cir. 1995) (detention at gunpoint violated the Fourth Amendment as there was "simply no evidence of anything that should have caused the officers to use the kind of force they are alleged to have used").

While police officers may detain occupants of a home during the execution of a lawful search warrant for the home, *see Michigan v. Summers*, 452 U.S. 692 (1981), it is established that "the lawfulness of a detention incident to execution of a warrant is not evaluated only at its inception; the length and intrusiveness of the detention may render is unreasonable." *Okorie v. Crawford*, 921 F.3d 430, 437 (2019) (citing *Muehler v. Mena*, 544 U.S. 93, 100 (2005) (noting that the duration of a detention can impact its lawfulness); *Heitschmidt v. City of Houston*, 161 F.3d 834, 838-39 (5th Cir. 1998) (holding that a *Summers* detention was unreasonably

prolonged and intrusive)). "Unreasonable actions include the use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time." *L.A. County v. Rettele*, 550 U.S. 609, 614 (2007) (citing *Muehler v. Mena*, 544 U.S. at 100; *Graham v. Connor*, 490 U.S. 386, 396-399 (2007)).

Here, Plaintiffs have alleged sufficient facts to state a claim of excessive force against the officers. Any force used must be reasonable under the circumstances. *Graham*, 550 U.S. at 397. Plaintiffs' complaint alleges that Defendant Officers knowingly executed an unconstitutional warrant procured by Defendant Officers through false statements and material omissions. During their execution of this 'no-knock' warrant to search for a gun, as well as all of Mr. Miller's recording devices and photographic evidence, Defendant Officers held all Plaintiffs at gun point, including M.P. and J.G., two minor children, for the duration of the unlawful search which caused harm to Plaintiffs. (ECF # 1, ¶ 13-42).  Defendant Officers knowledge that Mr. Miller had a fake, not real gun that day at city hall, and knowledge that their warrant was based on intentionally false statements and omissions, are sufficient facts to permit the inference that Defendant Officers did not "reasonably perceive" Plaintiffs to be dangerous and accordingly their use of excessive force by detaining Plaintiffs at gunpoint for the duration of the knowingly unlawful search violated the

Fourth Amendment's reasonableness requirement.[5] *See Flores v. Rivas*, at \*19-20; *Heitschmidt v. City of Houston*; 161 F.3d at 989-839; *Graham v. Connor*, 490 U.S. at 397.

d. <u>Constitutional Violation – Malicious Prosecution (Count V)</u>

"The right to be free from malicious prosecution is guaranteed by the Fourth Amendment." *Rodriguez v. Rutter*, 310 F. Appx. 623, 628 (5th Cir. 2009) (citing *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir. 1999)). While this Circuit has determined "there is no "freestanding constitutional right to be free from malicious prosecution," "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example."" *Winfrey v. Rogers*, 901 F.3d 483, 491 (5th Cir. 2018) (quoting *Castellano v. Fragozo*, 253 F.3d 939, 953 (5th Cir. 2003)). As noted by the Fifth Circuit in *Winfrey*:

> In *Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1998), a plurality of the Supreme Court said that malicious-prosecution claims must be based on the Fourth Amendment, rather than on "the

---

[5] Defendants cite to *Strickland v. City of Crenshaw, Miss.*, 114 F. Supp. 3d 400 (N.D. Miss. 2015), for the proposition that "pointing of weapons during the execution of a search warrant was not a constitutional violation." (ECF # 8, p. 5). However, the court did not find that a constitutional violation could not occur from pointing weapons at unarmed and nonthreatening individuals suspected of no crimes for the duration of an unlawful search. To the contrary, the court did not believe the plaintiffs had presented enough <u>evidence</u> to support their claims, an issue not relevant to a motion to dismiss. *Strickland*, 113 F. Supp. at 417-418. In granting summary judgment to Defendant Officers, the court noted that Plaintiff had not provided a robust consensus of case law demonstrating the right was clearly established. *Id*. Conversely, as discussed herein, Plaintiff submits that he has demonstrated a "robust consensus" to overcome the qualified immunity defense at the motion to dismiss stage. *See also*., *infra*, p. 17-18.

more generalized notion of 'substantive due process,'" because the Fourth Amendment is the explicit textual source against this type of government behavior. *Id*. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). And recently, in *Manuel v. City of Joliet*, 137 S. Ct. 911, 197 L. Ed. 2d 312 (2017), the Supreme Court considered whether a plaintiff had stated a Fourth Amendment claim when he was arrested and charged with unlawful possession of a controlled substance based upon false reports written by a police officer and an evidence technician. *Id*. at 915. There, the Court said the plaintiff's "claim fits the Fourth Amendment, and the Fourth Amendment fits [the plaintiff's] claim, as hand in glove." *Id*. at 917.

Thus, while the Fifth Circuit does not recognize a standalone claim for malicious prosecution, the Supreme Court and the Fifth Circuit have recognized malicious prosecution claims based on Fourth Amendment violations. *Id*.

In *Winfrey*, the Court vacated the district court's grant of summary judgment to a deputy for claims under the Fourth Amendment. In its opinion the Court found the plaintiff stated a claim for the tort of malicious prosecution "because [he] was arrested through the wrongful institution of the legal process: an arrest pursuant to a warrant, issued through the normal legal process, that is alleged to contain numerous material omissions and misstatements." 901 F.3d at 493. The Court utilized a similar analysis with regard to false statements used to procure a search warrant as discussed supra, section b, Plaintiff's claim of unlawful entry. *See id*. at 494-496 (utilizing *Franks v. Delaware* standard to determine whether officer's misstatements in affidavit were product of deliberate falsehoods, denying summary judgment where

17

issue of material fact present as to how the misstatements and omissions were made and where corrected affidavit did not provide probable cause).

Here, Plaintiff's complaint contains sufficient allegations to state a claim for a violation of the Fourth Amendment for Defendant Officers malicious prosecution of Plaintiff. Similar to *Winfrey*, Plaintiff alleges he was "arrested through the wrongful institution of the legal process" based on "numerous material omissions and misstatements" where Defendant Officers knew he did not enter a court house with a firearm and did not violate any relevant laws when they arrested and charged him with a crime. 901 F.3d at 493; (ECF # 1, ¶ 34-42, 70-84). Plaintiff was prosecuted for the crime of possessing a gun on government property and found not guilty, as he did not have a weapon on government property. Accordingly, Plaintiff has stated a claim against Defendant Officers for a claim of malicious prosecution in violation of the Fourth Amendment.

e. Supervisory Liability

Defendant Salvaggio claims he is entitled to immunity because supervisory officials cannot be liable under vicarious liability. (ECF # 8, p. 4). While Defendant Salvaggio cannot be held liable under a theory of vicarious liability, he can be held liable under a theory of supervisory liability under 42 U.S.C. § 1983. *See Gates v. Tex. Dep't of Protective &Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) ("A supervisory official may be held liable under § 1983 only if (1) he affirmatively

18

participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."). Here the complaint alleges personal involvement by Defendant Salvaggio in the constitutional violations described by Defendant Officers. (ECF # 1, ¶ 11, 34-42). Defendant Salvaggio can therefore be held liable for the claims alleged in Plaintiff's complaint and his motion should be dismissed.

### f.  Qualified Immunity -  Clearly Established Law

Defendants are not entitled to qualified immunity for their conduct alleged because they violated Plaintiffs' clearly established constitutional rights to be free from excessive force and unlawful searches and seizures without probable cause. "In the context of a motion to dismiss, "if the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the defense of qualified immunity will not sustain a motion to dismiss under Rule 12(b)(6)."" *Morales v. Gomez*, No. EP-14-CV-00189-DCG, 2014 U.S. Dist. LEXIS 202305, at *9 (W.D. Tex. Nov. 7, 2014) (quoting *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000) overruled on other grounds by *McClendon v. City of Columbia*, 305 F.3d 314, 329 (5th Cir. 2002)). As discussed herein, Plaintiffs have alleged sufficient facts to support the claims of retaliatory arrest, unlawful entry, excessive force, and malicious prosecution. Defendant Officers are therefore not entitled to dismissal.

"In order for a right to be 'clearly established,' the relevant legal authorities must give the officer 'fair warning' that his or her conduct was unlawful." *Gerhart v. McLendon*, 714 Fed. Appx. 327, 333 (5th Cir. 2017) (citing *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002)). "Although the right cannot be defined too abstractly, the Supreme Court has rejected any requirement that the facts of prior cases be 'fundamentally' or 'materially' similar." *Id*. (citing *Hope*, at 741). "Thus, officials can still be on notice that their conduct violates established law even in novel factual circumstances. The key question is not whether there is a case directly on point, but whether a reasonable officer would understand that his or her conduct was unlawful." *Id*. (citing *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004) (internal citation omitted).

The court "need not immunize an officer from suit for an obvious violation simply because no case has held that the officer's precise conduct was unlawful." *Id*. at 334-335. Where there is an absence of controlling authority, "a consensus of cases of persuasive authority" can be "sufficient to compel the conclusion that no reasonable officer could have believed that his or her actions were unlawful. Case law need not be directly on point, though it should be close, and if the conduct is particularly outrageous, the caselaw putting the officer on notice can be more general in character." *Graves v. Zachary*, 277 Fed. Appx. 344, 348 n.4 (5th Cir. 2008) (citing *McClendon v. City of Columbia*, 305 F.3d 214, 329 (5th Cir. 2002) and *Pierce v.*

*Smith*, 117 F.3d 866, 882 (5th Cir. 1997) ("We recognize that in order to preclude qualified immunity it is not necessary that the very action in question has previously been held unlawful, or that the plaintiff point to a previous case that differs only *trivially* from his case. However, the facts of the previous case do need to be *materially* similar. We also recognize that the egregiousness and outrageousness of certain conduct may suffice to obviously locate it within the area proscribed by a more general constitutional rule . . . .").

"In the excessive force context, a constitutional violation is clearly established if no reasonable officer could believe the act was lawful." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018) (citing *Manis v. Lawson*, 585 F.3d 839, 846 (5th Cir. 2009)). Here, Plaintiffs "had a clearly established right to be free from excessive force, and it was clearly established that the amount of force that the officers could use depended on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009). Relying on Fifth Circuit precedent, a court in this district has denied qualified immunity at the motion to dismiss stage finding it was clearly established that it is "objectively unreasonable for a police officer to forcefully brandish a deadly weapon at citizens whom he could not reasonably have perceived to be dangerous." *Flores v. Rivas*, 2020 U.S. Dist. LEXIS 22047, at *19-20 (W.D. Tex. Jan. 31. 2020).

In *Hinojosa v. Terrell*, 834 F.2d 1223, 1230 (5th Cir. 1988), the plaintiffs alleged excessive force and Court found that pointing a gun was not so "grossly disproportionate to the need for action under these circumstances." *Id*. at 1230-1231. There, officers had responded to a pool hall where fights had and were continuing to occur and where one officer was "on the ground engaged in a physical altercation." *Id*.  The court placed emphasis on the fact that there was no physical injury resulted, a factor that is no longer dispositive of the analysis. *Id*. at 1230; *Manis*, at *25-26; *Flores v. City of Palacios*, 381 F.3d 391, 397-398 (5th Cir. 2004). While finding the act of pointing a gun was not excessive force under those facts, the *Hinojosa* court did not foreclose excessive force claims being brought when a citizen is unlawfully threatened with a gun by police officers where there is no lawful basis to do so. Accordingly, Plaintiffs submits that the right to be free from excessive force in having a gun pointed at him was clearly established law and Defendant Officers are not entitled to qualified immunity.

While officers are permitted reasonable force to detain the occupants of a home to execute a lawful search warrant, Defendant Officers here knew there was no lawful basis to procure a warrant and search Plaintiff's home holding all Plaintiffs at gunpoint causing harm. Defendant Officers knew there were no exigent circumstances requiring they enter Plaintiff's home without a lawful warrant. No reasonable officer would believe it lawful to execute an unlawful warrant based on

knowingly false information and out of retaliation to constitutionally protected conduct and then proceed to conduct the unlawful search while holding all occupants, including two minor children, at gunpoint. "The requirement of probable cause has roots that are deep in our history." *Mich. v. Summers*, 452 U.S. 692, 697 (1981). This requirement is of "central importance…to the protection of a citizen's privacy afforded by the Fourth Amendment's guarantees." *Id.* "Physical entry into the home is the chief evil against which the Fourth Amendment is directed." *Roe v. Tex. Dep't of Protetive & Regulatory Servs.*, 299 F.3d 395, 405 n.12 (5th Cir. 2002). Defendant Officers execution of an unlawful no-knock warrant violated Plaintiff's clearly established Fourth Amendment rights.

It is clearly established that an officer may be liable for his false statements resulting in a warrant being issued without probable cause "regardless of whether he signed the application or was present when the affiant appeared before the judge." *Michalik v. Hermann*, 422 F.3d 252, 258 n.5 (5th Cir. 2005). Plaintiff alleges Defendant Officers procured and executed the warrant based on knowingly false statements that Plaintiff had brought a weapon into the city court house. Plaintiff alleges Defendant Officers knew the gun was fake and that their conduct was in response to his constitutionally protected conduct of filing a complaint with the police department. (ECF # 1, ¶ 13-57).

Finally, it is clearly established that an arrest without probable cause and in retaliation violates the Fourth and First Amendments to the U.S. Constitution. *See Keenan v. Tejada*, 290 F.3d 252, 262 (5th Cir. 2002) ("If no reasonable police officer could have believed that probable cause existed for the law enforcement actions of Tejeda and Martinez against the plaintiffs, then their retaliation violated clearly established law in this circuit."); *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) ("An arrest is unlawful unless it was supported by probable cause.").

Plaintiffs' allegations that Defendant Officers knowingly procured and executed a warrant based on intentionally false statements, i.e. that Plaintiff Miller brought a weapon on government property when the officers knew it was fake, and in response to him making a complaint against the police department, and then executed said warrant by holding all occupants of his home, including two minor children, at gunpoint for the duration of the search, state claims for "unreasonable violation[s] of [] clearly established constitutional right[s]." *Morales v. Gomez*, No. EP-14-CV-00189-DCG, 2014 U.S. Dist. LEXIS 202305, at *9 (W.D. Tex. Nov. 7, 2014) (quoting *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000)). The warrant was procured in response to constitutionally protected conduct and without probable cause that a crime was committed. Thus, "the defense of qualified immunity will not sustain a motion to dismiss under Rule 12(b)(6)." *Id*.

## CONCLUSION

For the reasons stated herein, and where Defendants have only moved to dismiss the first five counts of a nine-count complaint, Plaintiffs respectfully request this Honorable Court deny Defendant Officers' motion to dismiss. In the alternative, if this Court finds any pleading-related issues in Plaintiffs' complaint, Plaintiffs respectfully request this Court grant an opportunity to amend.

Respectfully submitted,

EXCOLO LAW, PLLC

Dated: July 20, 2020          By:     */s/ Solomon M. Radner*
                                      Solomon M. Radner
                                      MI Bar No. P73653
                                      Attorney for Plaintiffs
                                      26700 Lahser Rd., Suite 401
                                      Southfield, MI  48033
                                      (866) 939-2656
                                      sradner@excololaw.com

## CERTIFICATE OF SERVICE

Undersigned hereby states that on July 20, 2020, he caused the foregoing document to be filed electronically with the United States District Court and that a copy of said document was sent to all counsel of record through the Court's CM/ECF electronic filing system.

*/s/ Solomon M. Radner*