UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JACK MILLER, et al.,

     *Plaintiffs*,

v.                             **Case No. SA-20-cv-00642-JKP**

CHIEF JOSEPH SALVAGGIO, et al.,

     *Defendants*,

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to dismiss filed by Defendants Leon Valley Police Officers Brooks, King, Munoz, and Rivera (ECF No. 16). With the filing of the response (ECF No. 18) and reply (ECF No. 20) the motion is ripe for ruling. For the reasons set forth below, the Court partially grants the motion.

## I. BACKGROUND

This case centers on a warrant issued for the arrest of Jack Miller and the search of his home. Plaintiffs Jack Miller, Annabel Campbell, Matthew Pesina, Lisa Pesina, and minors M.P. and J.G., allege Officer Rivera made knowing and intentional false statements and material omissions in her affidavit for the warrant. And Officers Brooks, King, and Munoz executed the warrant knowing it was defective. Plaintiff Miller alleges the warrant was sought and he was arrested and prosecuted for a violation of Tex. Penal Code 46.03, in retaliation for exercising his First Amendment rights. All Plaintiffs allege Defendants violated their Fourth Amendment rights when the officers unlawfully entered Miller's home and held Jack, Annabel, Matthew, Lisa, M.P., and J.G. at gunpoint.

The amended complaint brings nine counts against the police officers: retaliatory arrest (Counts I-II); unlawful entry (Count III); excessive force (Count IV); malicious prosecution (Count V); retaliatory prosecution (Counts VI-VII); failure to intervene (Count VIII); conspiracy (Count IX). Defendants Brooks, King, Munoz, and Rivera's motion to dismiss invokes qualified immunity on Counts I-V of Plaintiffs' amended complaint. *ECF No. 16* at 3. Their reply invokes qualified immunity "for all claims made the basis of Plaintiffs' First Amended Complaint." *ECF No. 20* at 2.

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a plaintiff need not plead the legal basis for a claim, the plaintiff must allege "simply, concisely, and directly events" that are sufficient to inform the defendants of the "factual basis" of a claim. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). Furthermore, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8. Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged in a pleading must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012). In the context of a motion to dismiss, plaintiffs carry this burden when their

operative pleading alleges that (1) "defendants committed a constitutional violation under current law" and (2) "the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)).

While "formulaic recitations or bare-bones allegations will not survive a motion to dismiss," *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019), compliance with *Iqbal* and *Twombly* requires only that the *facts* plausibly allege a constitutional violation. And the Court views the actions of a defendant for objective unreasonableness as alleged in the operative pleading, not as it would on summary judgment. As the Supreme Court recognized long ago,

> the legally relevant factors bearing upon the [qualified immunity] question will be different on summary judgment than on an earlier motion to dismiss. At that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for "objective legal reasonableness." On summary judgment, however, the plaintiff can no longer rest on the pleadings, and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry.

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original) (citation omitted); *accord McClendon*, 305 F.3d at 323. Naturally, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

### III. APPLICABLE LAW

#### A. 42 U.S.C. § 1983

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United

States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). "[T]here can be no § 1983 liability unless the plaintiff has "suffered a constitutional violation . . . at the hands of . . . a state actor." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc). Accordingly, for a § 1983 claim to survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021) (quoting the same to "state a claim under § 1983").

**B. Qualified Immunity**

Qualified immunity shields government officials from § 1983 liability *unless* the defendant's actions "violated a federal statutory or constitutional right" *and* the right was "clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Both prongs must be satisfied to deny qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may begin the analysis at either prong. *Id.* at 236.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle*, 566 U.S. at 664). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Thus, the "Supreme Court has rejected a rigid requirement that previous cases be 'materially similar' in order for the law to be clearly established. We need not immunize an officer from suit for an obvious violation simply because no case has held that the officer's

precise conduct was unlawful." *Gerhart v. McLendon*, 714 F. App'x 327, 334-35 (5th Cir. 2017) (per curiam) (citations omitted). Accordingly, a nonmovant satisfies the clearly established prong by demonstrating that "the state of the law at the time of the incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation and internal quotation marks omitted).

## IV. FACTS ALLEGED

For the purpose of the subject motion to dismiss, the facts alleged in Plaintiffs' amended complaint (ECF No. 13) are accepted by the Court as true. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. In the late afternoon of May 31, 2018, Jack Miller went to the Leon Valley City Hall to file a complaint against the police department. *ECF No. 13* ¶ 23. Plaintiff Miller approached the security checkpoint with a fake gun on his hip in plain sight. *Id.* ¶¶ 27-28. Officer Rivera was the security officer on duty and she knew the gun was fake. *Id.* ¶ 32. Miller informed Rivera that he was there to deliver a complaint. *Id.* ¶ 30. She asked him to stand to the side. *Id.* ¶¶ 30-31. An Officer Wells then asked Miller to put the gun in his car and accompanied Miller as he did so. *Id.* ¶¶ 34-37. Miller was thereafter allowed entrance to City Hall, where he remained for the next thirty minutes while he filed one complaint alleging that the City of Leon Valley was violating Tex. Govt. Code § 411.209 and drafted another complaint about the officers requiring him to put his fake gun in his car. *Id.* ¶¶ 25, 38-41, 45.

While Miller drafted his complaint, an Officer Anderson taunted him, trying to engage Miller in a confrontation. *Id.* ¶ 41. Miller refused to engage Defendant Anderson, instead insisting that Officer Anderson get another "more professional acting" officer to handle the complaint. *Id.* ¶ 42. An Officer Saucedo then joined the group of officers inside City Hall, shook

hands with Miller, and took his complaint. *Id.* ¶ 43. Miller went outside, smoked a cigarette with a friend, and after approximately twenty minutes, Miller and his friend departed. *Id.* ¶ 44.

Later that evening, Officer Rivera swore out an affidavit that contained statements she knew were false, to wit: that Miller entered the Leon Municipal Court carrying a firearm. *Id.* ¶¶ 32, 54; *ECF No. 18* at 2, 10. Rivera's affidavit procured a warrant to arrest Miller, search his home, and seize certain items, including a black semi-automatic handgun. *ECF No. 13* ¶ 55. Rivera then briefed Defendants Brooks, King, and Munoz, telling them that Miller had carried a fake gun into City Hall. *Id.* ¶ 48.

Miller arrived home around midnight. *Id.* ¶ 46. Later, "in the middle of the night" Brooks, King, and Munoz executed the warrant. *ECF No. 18* at 2, 5. Without knocking and announcing their presence, the officers entered Miller's home, and pointed their guns at everyone inside, including Plaintiffs Annabel Campbell, Matthew Pesina, Lisa Pesina, and two minor children, M.P. and J.G. *ECF No. 13* ¶¶ 49, 56. Some officers held the Plaintiffs at gunpoint while others searched Miller's home. Miller was arrested and charged with a violation of Tex. Penal Code 46.03.[1] *Id*. ¶¶ 56-57. The charges were later dismissed. *Id*. ¶ 58.

## V. DISCUSSION

### A. Defective Warrant

The threshold issue in this case is the validity of the warrant. If Plaintiffs fail to allege a *Franks* violation, many of the claims in the amended complaint will be subject to dismissal. A sufficiently pled *Franks* violation alleges facts that show (1) a defendant prepared or presented an application for a warrant, (2) which included a false statement that was made "knowingly and

---

[1] "A person commits an offense if the person intentionally, knowingly, or recklessly possesses or goes with a firearm . . . (a): on the premises of any government court or offices utilized by the court, unless pursuant to written regulations or written authorization of the court. . . ." Tex. Penal Code 46.03.

intentionally, or with reckless disregard for the truth," *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978), or "misleading material omissions that were recklessly, intentionally, or knowingly omitted," *Marks v. Hudson*, 933 F.3d 481, 487 (5th Cir. 2019) (citing *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006)), and (3) that "the allegedly false statement is necessary to the finding of probable cause," *Winfrey*, 901 F.3d at 494. The *Franks* decision "clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks*, 438 U.S. at 155-56).

Plaintiff Miller alleges Defendant Rivera knowingly and intentionally made false statements and material omissions in her affidavit for the warrant to arrest Miller and search his home. Specifically, Rivera stated in her affidavit for warrant that Miller entered the Leon Municipal Court carrying a firearm. Miller's pleading allows the reasonable inference that Rivera stated in her affidavit for warrant that Miller carried a black semi-automatic handgun into the Municipal Court. *Id.* ¶ 55 ("The warrant commanded Defendant Officers to enter and search Plaintiff Miller's home for a black semi-automatic [handgun] . . . .").

Miller alleges the statements were knowing because Rivera knew the gun Miller carried was fake and she knew that Miller did not enter the Leon Municipal Court. Miller alleges Rivera knew the gun was fake because it was in plain sight on his hip and she asked him to stand to the side when he approached security. Miller alleges Rivera knew he did not enter the Court because she asked him to stand aside when he arrived at security, seeking to enter Leon Valley City Hall. *ECF No. 13* ¶¶ 27-32. Miller alleges Rivera's statements were intentional because he was at City

Hall in the late afternoon and the warrant was not procured until later that evening. *Id.* ¶ 54.

Violation of the statute that prohibits carrying a firearm "on the premises of any government court or offices utilized by the court" requires that the firearm be "designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." Tex. Penal Code 46.03. Consequently, the type of firearm Miller carried was necessary to the finding of probable cause.

Accepting "all well-pled facts as true," drawing all reasonable inferences in the pleader's favor, and disregarding "conclusory allegations, unwarranted factual inferences, [and] legal conclusions,"[2] the Court concludes that the amended complaint sufficiently alleges a *Franks* violation.

## B. Retaliatory Arrest and Prosecution

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in "constitutionally protected speech." *Hartman* v. *Moore*, 547 U.S. 250, 256 (2006). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citation omitted).

It is clearly established that an arrest or prosecution *unsupported by probable cause* that is made in retaliation for protected speech violates the First Amendment. *See Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 391 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citing *Allen v.*

---

[2] *See White v. United States Corr., L.L.C.*, 996 F.3d 302, 306-07 (5th Cir. 2021) (citing *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020)) ("We accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff. . . . But we do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

*Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016)) (individuals who protest are protected under the First Amendment from retaliatory actions by government officials); *Keenan* v. *Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002) (retaliatory criminal prosecutions may constitute actionable First Amendment violation); *cf. Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999) (false accusations and attempts to prosecute city councilor were not retaliatory because they did not result in arrest or indictment). *See also Hartman*, 547 U.S. at 256 ("the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out") *cf. Nieves*, 139 S. Ct. at 1727 (with limited exception, a retaliatory arrest claim cannot proceed unless "plaintiff has met the threshold showing of the absence of probable cause").

In 2017, the Fifth Circuit concluded "that First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions." *Turner v. Driver*, 848 F.3d 678, 688 (5th Cir. 2017). Thus, in the Fifth Circuit, lawfully conducted First Amendment auditor activities are protected by the First Amendment.

A sufficiently pled First Amendment retaliation claim alleges facts that show: (1) the plaintiff was engaged in a constitutionally protected activity, (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) but-for causation. *Nieves*, 139 S. Ct. at 1721-22; *Keenan,* 290 F.3d at 258. A retaliatory arrest or prosecution claim also requires a plaintiff plead and prove the absence of probable cause, unless "plaintiff presents objective evidence that he was arrested [and that] otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Roy v. City of Monroe*, 950 F.3d 245, 255 n.4 (5th Cir. 2020) (alteration in original)

(quoting *Nieves*, 139 S. Ct. at 1727). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty v. Tex. Southern University*, 391 F.3d 653, 655-56 (5th Cir. 2004) (quoting *Glenn v. City of Tyler,* 242 F.3d 307, 313 (5th Cir.2001)).

Plaintiff Miller alleges he was engaged in the protected activities of filing a complaint against the police department and acting as a First Amendment auditor. *ECF No. 13* at 5-7, 10-11. *Cf. City of Houston, Tex. v. Hill,* 482 U.S. 451, 462-63 (1987) ("The freedom of individuals . . . to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."). Miller alleges he was arrested, charged, and prosecuted for a violation of Tex. Penal Code 46.03. *ECF No. 13* at 9. *See Keenan,* 290 F.3d at 259 (the cost and effort of facing trial without probable cause would chill an ordinary person).

By alleging that he was carrying a fake gun and that the officer who swore out the affidavit for warrant knew it was a fake gun, Plaintiff has plausibly alleged that probable cause was lacking to arrest him. *See In re K. H.*, No. 06-04-00103-CV, 169 S.W.3d 459, 464 (Tex. App.—6th Dist. Texarkana 2005, no pet.) (holding that carrying a device that is not "designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use" does not violate Tex. Penal Code 46.03). And by alleging that officers taunted him while he waited to file his complaint, that the warrant for his arrest was not requested until hours later, and that he was arrested by officers who knew the warrant was defective, Miller has plausibly alleged that the cause of his arrest and prosecution was his protected activity. *ECF No. 13* at 6-7.

In the absence of probable cause, law enforcement officials are entitled to qualified immunity "if a reasonable officer could have believed the arrest to have been lawful, in light of clearly established law and the information the arresting officers possessed." *Morgan v. City of DeSoto, Tex.*, 900 F.2d 811, 814 (5th Cir. 1990) (citing *Anderson v. Creighton*, 483 U.S. 635, 643 (1987)). The Court has concluded that the amended complaint sufficiently alleges a *Franks* violation. In light of the alleged false statements and material omissions in the affidavit for warrant, and the allegation that before Brooks, King, and Munoz executed the warrant, they were told that Miller had been carrying a fake gun that day, the Court cannot, at this stage of the proceedings, conclude that Defendants Brooks, King, Munoz, and Rivera "reasonably but mistakenly concluded that probable cause was present." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009).

On the facts alleged, Plaintiff Miller's First Amendment retaliatory arrest claims against Brooks, King, Munoz, and Rivera are sufficient to deny qualified immunity and survive the motion to dismiss. Accordingly, Counts I and II shall proceed.

Plaintiff Miller alleges he was charged with "Places Weapons Prohibited" in violation of Tex. Penal Code 46.03, prosecuted, and the case dismissed due to "insufficient evidence." *ECF No. 13* ¶¶ 57-58. "In a retaliatory prosecution case, the key defendant is typically not the prosecutor who made the charging decision that injured the plaintiff, because prosecutors enjoy absolute immunity for their decisions to prosecute. Rather, the key defendant is the person who allegedly prompted the prosecutor's decision." *Reichle v. Howards*, 566 U.S. 658, 667–68 (2012). Upon careful review of the amended complaint and Plaintiffs' response, the Court cannot conclude that any defendant took action to encourage Miller's prosecution. The alleged *Franks* violation alone is insufficient to allow the Court to draw a reasonable

inference that Brooks, King, Munoz, or Rivera prompted the decision to prosecute Miller. *See McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (citations omitted) ("When the motion to dismiss raises the defense of qualified immunity, the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm ... alleged and that defeat a qualified immunity defense with equal specificity.'"). Accordingly, and for the reasons set forth below, the Court dismisses Counts VI and VII with leave to amend.

## C. Malicious Prosecution

Freestanding constitutional claims for malicious prosecution are not recognized in the Fifth Circuit. *See Castellano v. Fragozo,* 352 F.3d 939, 945 (5th Cir. 2003) (en banc) ("we conclude that no such freestanding constitutional right to be free from malicious prosecution exists"). Indeed, "plaintiffs no longer allege a constitutional violation by satisfying the state law elements of malicious prosecution alone" but must "state a claim under the Fourth Amendment directly." *Izen v. Catalina*, 398 F.3d 363, 366-67 (5th Cir. 2005) (citing *Castellano*, 352 F.3d at 942). As the Fifth Circuit has explained, because a malicious prosecution claim is a state law tort claim, "[t]here is no constitutional right to be free from malicious prosecution" but the "facts underlying" this state law tort claim "may *constitute*" an unconstitutional search, seizure, or violation of due process. *Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020) (emphasis in original). In other words, the same facts that form the basis of a state law malicious prosecution claim may support an allegation that a state actor violated a plaintiff's rights under the Fourth (search, seizure) or Fourteenth (due process) Amendment. In sum, a malicious prosecution claim "challenge[s] the integrity of criminal prosecutions undertaken 'pursuant to legal process.'" *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019).

As recited above, the facts underlying Miller's malicious prosecution claim allege Fourth Amendment violations—search and seizure unsupported by probable cause. *Cf. Melton v. Phillips*, 875 F.3d 256, 262, 264 (5th Cir. 2017) (explaining that preparing or presenting a warrant application that contains knowingly false statements or material omissions for the purpose of procuring an arrest warrant constitutes a Fourth Amendment violation). Plaintiff Miller's allegations are analogous to *Winfrey*, 901 F.3d at 491-92. There, the Fifth Circuit relied on *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), *Albright v. Oliver*, 510 U.S. 266 (1994), and *Castellano*, 352 F.3d 939, in concluding that "the Fourth Amendment is the appropriate constitutional basis" when a plaintiff alleges a wrongful arrest or prosecution due to a *Franks* violation.

Like the plaintiff in *Winfrey*, Miller alleges he was wrongfully arrested due to the knowing and intentional misstatements and omissions in Rivera's affidavit. *ECF No. 18* at 2, 10. Miller alleges Rivera knew the gun he carried was fake because she was in close proximity to him at the security checkpoint and that she knew Miller did not enter the Municipal Court because she denied him entrance to City Hall until he returned the fake gun to his car. *ECF No. 13* ¶¶ 27-32. Therefore, when she attested that Miller entered the Municipal Court carrying a black semi-automatic handgun she did so knowingly. Miller alleges the statements were intentional because he was at City Hall in the late afternoon and the warrant was not procured until late that evening. *Id.* ¶ 54 (alleging the warrant was signed at 10:30 PM). Accordingly, Miller has made sufficient allegations to give rise to a cognizable Fourth Amendment claim and overcome Rivera's qualified immunity.

Miller alleges that before they arrested him, Brooks, King, and Munoz received a briefing in which they learned that Miller had brought a fake gun to City Hall. *ECF No. 13* ¶ 48. The

alleged lapse in time between the issuance of the warrant and its execution allows the reasonable inference that Brooks, King, and Munoz had an opportunity to reflect on the information provided in the briefing and to review the warrant before executing it. *See id.,* ¶¶ 46, 53; *ECF No. 18* at 5, 10 (alleging that the warrant issued at 10:30 PM and was executed after midnight, or "in the late hours of the night" or "in the middle of the night"). By alleging that these officers arrested him on a warrant they knew was defective, Miller has made sufficient allegations to give rise to a cognizable Fourth Amendment claim and overcome Brooks, King, and Munoz's qualified immunity.

Importantly, Miller alleges that the charges were dismissed due to insufficient evidence. *ECF No. 18* at 5. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (articulating the favorable termination rule, which requires that a plaintiff who alleges a malicious prosecution claim must plead and prove that the prior criminal proceeding terminated in his favor). Therefore, Count V shall proceed.

**D. Unlawful Entry**

It is clearly established that law enforcement entering a dwelling must knock on the door, announce their presence, and state their authority before entering, unless they "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). The "knock and announce" rule is not inflexible. *Wilson* v. *Ark.,* 514 U.S. 927, 929, 934-936 (1995). And the burden "is not high" to show that circumstances exist—threat of physical violence, destruction of evidence, futility—to ignore the general rule. *Richards,* 520 U.S. at 394.

The amended complaint alleges facts that support the inference that there was no probable

cause to arrest Plaintiff Miller, the alleged facts show the warrant was procured many hours after Miller entered City Hall, and was executed more than an hour and a half after it was issued. Plaintiffs allege that Defendants did not knock and announce their presence before entering Miller's home. *See ECF No. 13* ¶ 49 (alleging that Defendants made unannounced entry into the open garage and, proceeding through the garage, then made unannounced entry through a closed door leading from the garage to the kitchen). There are no facts in the briefing that suggest knock and announce would, under the particular circumstances, be dangerous, futile, or inhibit effective investigation of the crime.

Viewed in the light most favorable to Plaintiffs, the allegations state a constitutional claim and show that Defendants actions were objectively unreasonable under clearly established law. Thus, the unlawful entry claim is sufficient to survive the motion to dismiss. Accordingly, Count III shall proceed.

**E. Excessive Force**

A claim for excessive force under the Fourth Amendment requires "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (internal quotations and citation omitted). "The second and third elements collapse into a single objective-reasonableness inquiry determined by the crime's severity, the suspect's threat, and whether the suspect is actively resisting arrest or trying to flee." *Hutcheson v. Dall. Cty.*, 994 F.3d 477, 480 (5th Cir. 2021) (internal quotations omitted) (quoting *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018)).

For reasons that will become clear below, the Court addresses the clearly established prong of qualified immunity before moving on to the question of whether Plaintiffs have stated a

claim for excessive force under the Fourth Amendment. *See Callahan*, 555 U.S. at 232, 236 (holding that while both prongs must be satisfied to deny qualified immunity, courts may begin the analysis at either prong).

On the facts alleged in this case, this Court finds persuasive *Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 WL 563799, at *7-9 (W.D. Tex. Jan. 31, 2020). In *Flores*, Judge Cardone conducts a thorough analysis, gathering the "robust consensus of cases of persuasive authority in the Courts of Appeals"[3] that is necessary to clearly establish that where "all *Graham* factors counsel against the use of force, it is objectively unreasonable for a police officer to brandish a deadly weapon at bystanders or compliant suspects." *Id.* at *9.

The incident forming the basis of the excessive force claim alleged in *Flores* occurred on July 5, 2018. *Flores*, 2020 WL 563799, at *1. The incident forming the basis of the excessive force claim alleged in this case occurred June 1, 2018. *ECF No. 13* ¶¶ 54, 77. The out of circuit consensus identified in *Flores* dates from 1995 to August 28, 2018.[4] Thus, the right to be free

---

[3] *Taylor v. Barkes,* 575 U.S. 822, 826 (2015) (citation omitted).

[4] *Flores*, 2020 WL 563799, at *8, citing:

> *Wilson v. Lamp*, 901 F.3d 981, 989–91 (8th Cir. 2018) (denying qualified immunity on excessive force claim against officers who continued to point weapons at driver of car and child, who were neither threatening nor resisting, after realizing neither passenger was the subject of a warrant); *Stamps v. Town of Framingham*, 813 F.3d 27, 42 (1st Cir. 2016) (denying qualified immunity and holding that "pointing a firearm at a person in a manner that creates a risk of harm incommensurate with any police necessity can amount to a Fourth Amendment violation"); *Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009) (denying qualified immunity to officers accused of "pointing a gun at a compliant adult in a non-threatening situation"); *Motley v. Parks*, 432 F.3d 1072, 1088–89 (9th Cir. 2005) (denying qualified immunity to officer who held child at gunpoint when *Graham* factors all counseled against use of force); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1192–93 (10th Cir. 2001) (denying qualified immunity to officers who held children at gunpoint after gaining control of situation); *Davis v. Bergeon*, No. 98-3812, 187 F.3d 635, 1999 WL 591448, at *5–6 (6th Cir. 1999) (denying qualified immunity to officer who pointed firearm at plaintiff "who was not suspected of any wrongdoing at that point in time"); *Baker v. Monroe Township*, 50 F.3d 1186, 1193–95 (3d Cir. 1995) (overturning summary judgment for officers and remanding for trial on the issue of whether pointing guns at non-threatening teenagers during daylight raid constituted unlawful arrest or excessive force).

from being held at gunpoint by police officers when all *Graham* factors counsel against the use of force was clearly established at the time of the incident alleged in this case.

The facts that differentiate *Flores* from this case—there, all the plaintiffs were children and the incident took place outdoors during the day; here, plaintiffs include adults and children and the incident took place inside a home late at night—are not as strong as the facts that bind these two cases—law enforcement brandished deadly weapons at bystanders or compliant suspects. Therefore, Judge Cardone's conclusion that it is clearly established that where "all *Graham* factors counsel against the use of force, it is objectively unreasonable for a police officer to brandish a deadly weapon at bystanders or compliant suspects," applies in this case.

On the facts alleged in this case, the *Graham* factors[5] counsel against the use of force: (1) Miller plausibly alleges there was no probable cause to arrest him and the other occupants of the house allegedly committed no crime and Defendants had no reason to suspect that they had; (2) Miller and the persons in his home were unarmed and not alleged to have done anything to threaten the officers' safety; and (3) Plaintiffs allegedly did nothing to resist, evade, or interfere with the arrest of Miller or the search of his home. Considering the *Graham* factors in light of the facts alleged, it was objectively unreasonable for Defendants to point their guns at Plaintiffs for the duration of the search of Miller's home.

Turning to the question of whether Plaintiffs' allegations state a violation of their right to be free from excessive force, the Court finds that they do not. The amended complaint contains no allegation that Plaintiffs suffered any injury. While the injury associated with an excessive force claim must be more than *de minimis,* it is "evaluated in the context in which the force was

---

[5] The *Graham* factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

deployed." *Lincoln v. Turner*, 874 F.3d 833, 846 (5th Cir. 2017) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). "In gauging the objective reasonableness of the force used by a law enforcement officer, [courts] must balance the amount of force used against the need for that force." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996). The extent of an injury "is directly related to the amount of force that is constitutionally permissible under the circumstances." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) (per curiam). Consequently, "as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.*; *accord Durant v. Brooks*, 826 F. App'x 331, 336 (5th Cir. 2020) (per curiam).

The amended complaint alleges that after they made entry into Miller's home, Brooks, King, and Munoz pointed their guns at everyone inside and "Plaintiffs suffered harm as a result." *ECF No. 13* ¶¶ 56, 85. Plaintiffs' response to the motion to dismiss states that the Defendants "held all Plaintiffs at gun point . . . for the duration of the unlawful search which caused harm to Plaintiffs." *ECF No. 18* at 14. These allegations do not sufficiently allege some injury. "A plaintiff alleging an excessive force violation must show that she has suffered 'at least some injury.'" *Flores v. City of Palacios*, 381 F.3d 391, 397 (5th Cir. 2004) (citing *Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)). Accordingly, and for the reasons set forth below, Count IV is dismissed with leave to amend.

**F. Failure to Intervene**

The amended complaint alleges that Brooks, King, Munoz, and Rivera worked in concert with one another to deter Plaintiff Miller from engaging in constitutionally protected activity. *ECF No. 13* ¶ 112. And none of them "intervened to stop the unlawful conduct of one or more of

the acting Defendant Officers." *Id.* ¶113. The motion to dismiss states "Plaintiffs allege: Count I and II - First Amendment violation; Count III – Fourth Amendment violation of false arrest; Count IV – Excessive force allegation and Count V – Malicious Prosecution." *ECF No. 16* at 3. In the motion, Brooks, King, Munoz, and Rivera "assert their entitlement to qualified immunity for Plaintiff's claims under the First Amendment, Fourth Amendment for false arrest, Excessive Force and Malicious Prosecution." *Id.* at 5. Consequently, the motion appears to move to dismiss Counts I-V of the amended complaint.

Because the failure to intervene claim is Count VIII, arguably, Defendants did not move to dismiss this claim. However, the Court observes that Plaintiffs' allegations in support of this claim fall short of the requirement to allege "simply, concisely, and directly events" that are sufficient to inform the defendants of the "factual basis" of the claim. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014); *see* Fed. R. Civ. P. 8(a) (every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

An officer's failure to intervene can be a constitutional violation under § 1983 if the officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646–47 (5th Cir. 2013). The officer must be present at the scene of the constitutional violation, and a court should consider whether the officer acquiesced in any conduct violating the individual's constitutional rights. *Id.* at 647 (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

It is unclear whether Plaintiff Miller brings this claim in relation to his First Amendment retaliation claims, all Plaintiffs bring the claim in relation to their Fourth Amendment excessive

force claims, or both. With respect to Miller's First Amendment claims, he does not allege that Brooks, King, or Munoz knew Rivera made knowing false statements or material omissions in the affidavit for warrant prior to its presentation to the magistrate, that there was a reasonable opportunity for these officers to prevent this harm, or that they chose not to act. Moreover, the complaint does not allege facts constituting their acquiescence in preparing the warrant or presenting it to the magistrate. Thus, Miller fails to state a claim that in *procuring* the warrant, a constitutional violation occurred as a result of Brooks, King, or Munoz's failure to intervene.

A failure to intervene claim based on Miller's arrest fairs better. Plaintiff alleges that after Rivera swore out the affidavit for warrant, Brooks, King, and Munoz learned that Miller carried a fake gun into City Hall and that they executed the warrant some length of time after this briefing took place. These facts sufficiently allege that Brooks, King, and Munoz were present when the alleged constitutional violation occurred, they had a reasonable opportunity to prevent the harm, and because they executed a warrant they knew was defective, they acquiesced in the conduct.

A Fourth Amendment excessive force claim for failure to intervene alleges "the defendant was present when the force was used, observed the use of excessive force, was in a position where he could realistically prevent the force, and had sufficient time to prevent it." *Spencer v. Rau*, 542 F. Supp. 2d 583, 595 (W.D. Tex. 2007) (citing *Davis v. Rennie*, 264 F.3d 86, 97–98 (1st Cir. 2001)). Assuming Plaintiffs can allege an excessive force claim, they appear to bring this failure to intervene claim against Brooks, King, and Munoz. The amended complaint seems to allege that each of these defendants held the occupants of Miller's home at gunpoint. But the amended complaint is not clear that it was specifically Brooks, King, and Munoz who held Plaintiffs at gunpoint, as it is also alleged that the house was searched. For these reasons, the

Court finds the failure to intervene claim insufficiently pled. In light of the deficiencies identified above, and for the reasons set forth below, Count VIII is dismissed with leave to amend.

**G. Conspiracy**

The Court recognizes that Defendants' motion to dismiss does not address Count IX of Plaintiffs' amended complaint. As noted above, Defendants' motion invokes qualified immunity on Counts I-V. *ECF No. 16* at 3. And their reply invokes qualified immunity "for all claims made the basis of Plaintiffs' First Amended Complaint." *ECF No. 20* at 2. Accordingly, in the absence of the Court ordering a surreply, Plaintiffs have no burden to "demonstrate the inapplicability of the [qualified immunity] defense" as to Count IX. *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012).

On a motion to dismiss, analysis of a conspiracy claim brought under § 1983 looks first to the viability of the constitutional claim and whether the defendant is protected by qualified immunity. Only if it is determined that the plaintiff has stated a constitution violation and the state action is not objectively reasonable, does the analysis "look to whether the officer's actions were taken pursuant to a conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (*abrogated on other grounds*). The state actions alleged to have harmed Plaintiffs are Miller's arrest and prosecution, the unannounced entry into his home, and the seizure of the occupants of the home all of which are tainted by the allegedly defective warrant. The Court has determined that Plaintiffs' claims regarding the warrant, the arrest, and the unannounced entry state a claim, overcome qualified immunity, and shall go forward. Therefore, the Court analyzes the conspiracy claim.

A claim for conspiracy under § 1983 must allege facts that show (1) "the existence of a conspiracy involving state action"; and (2) "a deprivation of civil rights in furtherance of the

conspiracy by a party to the conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (quoting *Pfannstiel*, 918 F.2d at 1187). A conspiracy is "[a]n agreement by two or more persons to commit an unlawful act, coupled with an intent to achieve the agreement's objective, and (in most states) action or conduct that furthers the agreement; a combination for an unlawful purpose." *Hurlston v. City of Princeton*, 672 F. App'x 335, 341 (5th Cir. 2016) (per curiam) (quoting Black's Law Dictionary (10th ed. 2014)). A complaint survives a motion to dismiss by alleging facts that show a prior agreement, plan, or meeting of the minds. *Arsenaux v Roberts,* 726 F.2d 1022, 1023-24 (5th Cir. 1982); *Cole v. Gray,* 638 F.2d 804, 811 (5th Cir. 1981).

The amended complaint alleges that Brooks, King, Munoz, and Rivera conspired with one another in procuring and serving the defective warrant in order to deter Miller from engaging in constitutionally protected activity. *ECF No. 13* ¶ 116. There are no facts that show Rivera conspired with Brooks, King, or Munoz when she drafted her affidavit. By alleging that Brooks, King, and Munoz knew the warrant was defective and executed it anyway, Plaintiff alleges facts that tend to show a meeting of the minds regarding arresting Miller and searching his home. Plaintiff Miller's arrest evidences a deprivation of his civil rights in furtherance of the conspiracy. Assuming Plaintiffs can state a claim for excessive force, this too would evidence a deprivation of civil rights in furtherance of the conspiracy. The facts therefore sufficiently state "an agreement to commit an illegal act which resulted in the plaintiff's injury." *Brunson v. Nichols*, 875 F.3d 275, 279 (5th Cir. 2017) (quoting *Hay v. City of Irving, Tex.*, 893 F.2d 796, 799 (5th Cir. 1990)). Accordingly, Count IX shall proceed.

**H. Leave to Amend**

When a pleading fails to state a claim, a court should "freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2). However, dismissal with prejudice is appropriate

if a court finds the pleader presented its "best case." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). And when there have been "several opportunities to state a cognizable claim . . . the court need not authorize another amendment." *Fregia v. Bright*, 750 F. App'x 296, 299 (5th Cir. 2018) (per curiam) (citing *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Moreover, leave to amend need not be granted when doing so would be futile—that is, when the amended pleading "would not withstand a motion to dismiss for failure to state a claim." *Life Partners Creditors' Tr. v. Cowley*, 926 F.3d 103, 125 (5th Cir. 2019) (alteration omitted).

The Court has not previously granted Plaintiffs leave to amend after apprising them of deficiencies in their pleading and, after careful review of the amended complaint, the Court finds that granting leave to amend would not be futile. However, additional detail will assist the Court in understanding the facts of this case.

For example, Plaintiffs' "statement of opposition" defines "Defendant Officers" as King, Brooks, Munoz, and Rivera. *ECF No. 18* at 2. Thus, when they state, "Defendant Officers held all Plaintiffs at gun point,  . . . for the duration of the unlawful search," Plaintiffs appear to be alleging that King, Brooks, Munoz, and Rivera engaged in this conduct. Having read the amended complaint and response, it seems unlikely that Rivera participated in the execution of the warrant. Put simply, using the phrase "Defendant Officers" in relation to all of the alleged conduct makes it difficult to tell who did what, such as which officers held the Plaintiffs at gunpoint, and which officers conducted the search of Miller's home. Plaintiffs could also provide more clarity as to how Rivera knew the gun was fake and who briefed King, Brooks, and Munoz before the raid. Plainly, Plaintiffs need not know the identity of every defendant at this stage of the proceedings, especially since that information is likely in Defendants' hands.

But to the extent possible, Plaintiffs should pair the state actor with the relevant conduct. Should Plaintiffs require limited discovery to assist them in in this endeavor, they should request it.

Additionally, Defendants did not properly move to dismiss Counts VI, VII, and VIII, therefore it would be improper for the Court to dismiss these claims with prejudice without giving Plaintiffs notice of the Court's intention and an opportunity to respond. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (holding that a court's sua sponte dismissal of a claim is permitted "as long as the procedure employed is fair" and concluding that "notice of the court's intention and an opportunity to respond" is a fair pre-dismissal procedure). For these reasons, the Court will grant Plaintiffs leave to amend.

## VI. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART and DENIES IN PART** Defendants Leon Valley Police Officers Brooks, King, Munoz, and Rivera's Motion to Dismiss (ECF No. 16). The Court **GRANTS** the motion to the extent that Plaintiffs' Counts IV, VI, VII, and VIII are dismissed without prejudice. It otherwise **DENIES** the motion.

Plaintiffs may file a second amended complaint on or before **August 20, 2021**. Failure to timely file a second amended complaint or to request an extension of time to do so may result in the Court dismissing with prejudice Counts IV, VI, VII, and VIII. Defendants have ten days from the date the second amended complaint is filed to serve and file any answer.

**It is so ORDERED this 6th day of August 2021.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**