**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**JACK MILLER, et al.,**

    *Plaintiffs,*

**v.**                                  **Case No. SA-20-cv-00642-JKP**

**CHIEF JOSEPH SALVAGGIO, et al.,**

    *Defendants,*

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COME Plaintiffs, JACK MILLER, ANNABEL CAMPBELL, MATTHEW PAESINA, LISA PESINA, M.P., and J.G., by and through their attorneys, for their Complaint against Defendants, respectfully alleges the following:

## JURISDICTION AND VENUE

1. This is a civil action for money damages brought pursuant to 42 U.S.C. § 1983, and the First and Fourth Amendments to the United States Constitution.

2. This Court has original jurisdiction over Plaintiffs' claims presented in this Complaint based upon the laws of the United States pursuant to 28 U.S.C. §§ 1331 and 1343.

3. The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding interest, costs, and attorney fees.

4.     The unlawful actions alleged in this Complaint took place within the jurisdiction of the United States Western District of Texas, San Antonio Division.

5.     Venue is appropriate in the Western District of Texas, San Antonio division pursuant to 28 U.S.C. § 1391(b) since the Individual Defendants are residents of Western Texas and the acts providing the legal basis for this Complaint occurred in the City of Leon Valley, County of Bexar, State of Texas.

## PARTIES

6.     The Plaintiffs, Jack Miller, Annabel Campbell, Matthew Paesina, Lisa Garcia, M.P. and J.G., at all pertinent times were residents of the City of Leon Valley, the State of Texas, and citizens of the United States.

7.     Defendant Joseph Salvaggio ("Defendant Salvaggio"), was the chief of police of Leon Valley. He has demonstrated a practice of disdain and outright disregard for individuals' constitutional rights. Defendant Salvaggio has a history of unlawfully and unconstitutionally using the powers with which he has been entrusted as a law enforcement officer and more specifically as a chief of police, to squash his dissidents, including those whose dissidence is constitutionally protected. At all times relevant Defendant Salvaggio was acting under the color of law.

8.     Defendant Jim Wells #548 ("Defendant Officer Wells"), at all times relevant, was employed as a police officer and acting under color of state law as a law enforcement officer.

2

9.     Defendant Officer Anderson #502 ("Defendant Officer Anderson"), at all times relevant, was employed as a Lieutenant police officer and acting under color of state law as a law enforcement officer.

10.     Defendant Officer Saucedo ("Defendant Officer Saucedo"), at all times relevant, was employed as a police officer and acting under color of state law as a law enforcement officer.

11.     Defendant Officer J. Vasquez #552 ("Defendant Officer Vasquez"), at all times relevant, was employed as a police officer and acting under color of state law as a law enforcement officer.

12.     Defendant Officer Brooks #521 ("Defendant Officer Brooks"), at all times relevant, was employed as a police officer and acting under color of state law as a law enforcement officer.

13.     Defendant Officer King #519 ("Defendant Officer King"), all times relevant, was employed as a police officer and acting under color of state law as a law enforcement officer.

14.     Defendant Officer Munoz #522 ("Defendant Officer Munoz"), all times relevant, was employed as a police officer and acting under color of state law as a law enforcement officer.

15.     Defendant Officer Rivera #567 ("Defendant Officer Rivera"), all times relevant, was employed as a police officer and acting under color of state law as a law enforcement officer.

16.     Defendant John Doe Kirby Officers ("Defendant Kirby Officers"), at all times relevant, were employed as police officers and acting under color of state law as a law enforcement officers. John Doe Kirby Officers participated in the search of Plaintiff's home and use of excessive force but cannot be identified without further discovery.

17.     Defendant State Police Officer John Doe ("Defendant State Officers"), at all times relevant, was employed as a police officer and acting under color of state law as a state law enforcement officer.

18.     The individual Defendants are sued in their individual capacity.

19.     Defendant, City of Kirby, is a political subdivision of Texas.

20.     Defendant, City of Leon Valley, is a political subdivision of the State of Texas.

21.      Upon information and belief, all the individually named Defendant Officers are citizens of the United States and are law enforcement officers within the jurisdiction of the County of Bexar and are employed by the City of Leon Valley or the City of Kirby.

22.    On or about May 31, 2018, at the time of the events alleged in this Complaint, all the individually named Defendants were at all times each acting in their individual capacities, within the course and scope of their employment as police officers and/or agents employed by the City of Leon Valley or City of Kirby, and under the color of law.

## FACTUAL BACKGROUND

23.    On May 31, 2018, Plaintiff Miller was at city hall at 4:30 pm for approximately 45 minutes, exercising his First Amendment Right to petition the government by delivering a complaint against the police department.

24.    Plaintiff Miller had a previous incident with the Olmos Park Police and was "arrested for sign" due to having a fake gun. Case# 18-02879 filed by reporting officer James Lopez #352 show that the gun was, indeed, fake.

25.    Plaintiff Miller entered Leon Valley City Hall to deliver complaint and notice in that the City of Leon Valley was violating Texas Government Code Sec. 411.209.  WRONGFUL EXCLUSION OF HANDGUN LICENSE HOLDER.

26.    Plaintiff Miller was required by law, under Sec. 411.209, to deliver the complaint, document the delivery, and record various facts regarding the violation including taking photographic evidence of the violation. This information would be turned into the Texas Attorney General office at a later date.

27.    Plaintiff Miller entered city hall to deliver complaint.

28.     Plaintiff Miller had a holster with a fake gun on his hip in plain sight.

29.     Having a fake gun at city hall is not an arrestable offense.

30.     Plaintiff Miller informed security that he was there to deliver a complaint.

31.     Defendant Officer Rivera asked Plaintiff Miller to stand to the side.

32.     Defendant Officer Rivera knew the gun was fake but proceeded to file a charge against Plaintiff anyway to institute criminal proceedings and a search of his home.

33.     Upon information and belief, while at city hall, Defendant Officers Wells, Rivera, Anderson, Vasquez, Saucedo, and Salvaggio were discussing the complaint. Defendant Officers Wells, Rivera, Anderson, Vasquez, Saucedo, and Salvaggio knew Plaintiff was exercising protected conduct.

34.     Defendant Officer Wells came to talk to Plaintiff Miller and asked him to leave with his gun.

35.     Plaintiff Miller walked out of city hall with Defendant Officer Wells.

36.     Plaintiff Miller was instructed to put his gun in car.

37.     Plaintiff Miller complied.

38.     Plaintiff Miller returned to city hall and was "wanded" by Defendant Officer Rivera and granted access to city hall.

39.     Defendant Officer Anderson came to speak with Plaintiff Miller.

40.     Plaintiff Miller insisted on writing a complaint.

41.     Plaintiff Miller remained on premises for 30 minutes, filing his complaint/notice, while Defendant Officer Anderson taunted Plaintiff Miller to engage in confrontation with Defendant Officer Anderson. Plaintiff Miller refused to engage Defendant Officer Anderson.

42.     Plaintiff Miller insisted that Defendant Officer Anderson get another "more professional acting" officer to handle the complaint.

43.     Defendant Officer Saucedo joined the group of officers inside of city hall where Plaintiff Miller was standing and filing his complaint/notice. He shook hands with Plaintiff Miller and took his complaint.

44.     Plaintiff Miller went outside and smoked a cigarette with his friend, Brian Howd, in the parking lot. After approximately 20 minutes, Plaintiff Miller and Howd drove away, leaving Leon Valley.

45.     Defendant Officers Rivera, Brenton, Brooks, Munoz, and King knew Plaintiff Miller had a fake gun on his hip.

46.     Defendant Officers King, Anderson, and Salvaggio initiated criminal proceedings and an unlawful arrest and search of Plaintiff's home.

47.     Plaintiff Miller arrived home at midnight.

48.     Defendant Officers, including but not limited to Defendants Brooks, King, Munoz, and the State Officer, arrived at Plaintiff Miller's home with an arrest

warrant for Plaintiff Jack Miller and a search warrant for his home, accompanied by the John Doe Kirby Police Officers and an unidentified State Police Officer, who had the warrant and the affidavit. The search warrant did NOT authorize a "no knock."

49.     Defendant Kirby officers had been briefed by Defendant Salvaggio, amongst other Defendant officers present at the municipal building earlier that day, on Plaintiff's possession of a fake gun yet still carried out the unlawful warrant procured through knowingly false statements.

50.     Defendant Kirby officers and Defendant Salvaggio proceeded to conduct a "No Knock" entry into plaintiff Miller's home by first making an unannounced entry into the open garage and then subsequent entry through a closed interior door that leads from the garage to the kitchen. Defendant Kirby officers and Defendant Salvaggio did NOT announce their presence or intent prior to making entry into Plaintiff Millers' residence. Defendant Kirby officers and Defendant Salvaggio only yelled "police" after opening a closed door and entering the kitchen area, pointing rifles at Plaintiffs Annabel Campbell, Matthew Pesina, Lisa Pesina and their 2 minor children.

51.     The sworn affidavits stated that Plaintiff Miller had entered the Leon Valley Municipal Court facility, with a firearm. This building does not exist.

52.     According to Kelly Kuenstler, MPA, the Leon Valley City Manager, Leon Valley does not have a courthouse.

53.     The building Plaintiff Miller entered is built/dedicated as, and well known to be the "Leon Valley City Hall" and The "Leon Valley Police Department" as indicated on the exterior building signage.

54.     The allegations in the affidavit were therefore false and the warrant was unlawfully obtained.

55.     The search warrant was issued at 10:30 pm on May 31, 2018 and signed by the Bexar County Magistrate.

56.     The warrant commanded Defendant Officers to enter and search Plaintiff Miller's home for a black semi-automatic hand gun, a Go Pro Camera, any cell phone media devices used to record, computer desk top or laptop, and photographic evidence.

57.     Defendant Kirby officers had been briefed by Defendant Salvaggio and other Defendant officers before they entered Plaintiff Miller's home and pointed their guns at everyone inside (all Plaintiffs party to this case).

58.     Miller was charged with "Places Weapons Prohibited" in violation of Texas Penal Code 46.03

59.     Miller was prosecuted for the aforementioned crime and the case was dismissed due to "insufficient evidence."

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment – Retaliatory Arrest)

60.     Plaintiffs incorporate herein all the prior allegations.

61.     Defendant Kirby Officers, Defendant State Officers, and Defendant Salvaggio intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently detained, handcuffed, and/or arrested Plaintiffs without any lawful basis.

62.     These adverse acts were done due to Plaintiff Miller's exercise of his First Amendment right to free speech and his right to file a formal complaint against law enforcement at city hall.

63.     Plaintiff Miller's retaliatory arrest was based on Defendant Officers' Rivera, King, Anderson and Vasquez knowing, deliberate, and reckless disregard for the truth, wherein they made false statements and omissions that created falsehoods that were incorporated into documents, including an affidavit and a no-knock search warrant. Such statements were material and necessary to finding probable cause for the false charges that were levied against Plaintiff Miller. The retaliatory arrest was made and continued under the color of law and without proper investigation, study, diligence, or basis. Further, the Defendant Officers had no knowledge of any fact or circumstance which would lead a reasonable person to believe that Plaintiff Miller committed any offense, whatsoever.

64.     All Defendant Officers intentionally arrested Plaintiff Miller and/or had him arrested with the intention of deterring him from exercising his First Amendment right to file a complaint at city hall.

65.     Defendant Kirby Officers', Defendant State Officers' and Defendant Salvaggio's conduct in entering Plaintiffs' home and aiming firearms at all of them deprived them of their liberty without their consent, probable cause, legal justification, just cause, or any other legally valid reason.

66.     Plaintiffs suffered emotional injuries and pain, mental anguish, humiliation, and embarrassment, in addition to other harms, as a result of Defendants' collective conduct.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (First Amendment – Retaliatory Arrest)

67.     Plaintiffs incorporate herein all prior allegations.

68.     Defendant Kirby Officers, Defendant State Officers, and Defendant Salvaggio intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently detained, handcuffed, and/or arrested Plaintiffs without any lawful basis.

69.     These adverse acts were done in retaliation to Plaintiff Miller being a First Amendment auditor.

70. In his role as a First Amendment auditor, Plaintiff Miller routinely records and/or photographs police officers.

71. Plaintiff Miller's retaliatory arrest was based on Defendant Officers' Rivera, King, Anderson and Vasquez knowing, deliberate, and reckless disregard for the truth, wherein they made false statements and omissions that created falsehoods that were incorporated into documents, including an affidavit and a no-knock search warrant. Such statements were material and necessary to finding probable cause for the false charges that were levied against Miller. The retaliatory arrest was made and continued under the color of law and without proper investigation, study, diligence, or basis. Further, the Defendant Officers had no knowledge of any fact or circumstance which would lead a reasonable person to believe that Plaintiff Miller committed any offense, whatsoever.

72. Defendant Officers intentionally arrested Plaintiff Miller and/or had him arrested with the intention of deterring Plaintiff Miller from engaging in First Amendment auditor activities.

73. Defendant Kirby Officers', Defendant State Officers' and Defendant Salvaggio's conduct in entering Plaintiffs' home and aiming firearms at all of them deprived them of their liberty without their consent, probable cause, legal justification, just cause, or any other legally valid reason.

74.    Plaintiffs suffered emotional injuries and pain, mental anguish, humiliation, and embarrassment, in addition to other harms, as a result of Defendants' collective conduct.

## COUNT III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – Unlawful Entry)

75.    Plaintiffs incorporate herein all prior allegations.

76.    Defendant Officers, acting under color of law, violated all Plaintiffs' constitutionally protected rights including their right to be free from unlawful entry without probable cause, guaranteed by the Fourth Amendment.

77.    Defendant Officer King filed a false affidavit to obtain a no-knock warrant based upon false information provided by Defendant Officers Vasquez, Rivera, Anderson and Wells.

78.    At or around 12:30am, Defendant Kirby Officers, Defendant State Officers and Defendant Salvaggio used the illegally obtained warrant as a basis for entering the Plaintiffs' home.

79.    Defendant Kirby Officers, Defendant State Officers, and Defendant Salvaggio entered the Plaintiffs' home unlawfully.

80.    Plaintiffs suffered emotional injuries and pain, mental anguish, humiliation, and embarrassment, in addition to other harms, as a result of Defendants' collective conduct.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment – Excessive Force)**

81.     Plaintiffs incorporate herein all prior allegations.

82.      Defendant Kirby Officers, Defendant State Officers, and Defendant Salvaggio, acting under color of law, violated all Plaintiffs' constitutionally protected rights including their right to be free from excessive force.

83.     Defendant Officer King filed a false affidavit to obtain a no-knock warrant based upon false information provided by Defendant Officers Vasquez, Rivera, Anderson and Wells.

84.     At or around 12:30am, Defendant Kirby Officers, Defendant State Officers and Defendant Salvaggio used the illegally obtained warrant as a basis for entering the Plaintiffs' home at the dark of night with weapons drawn.

85.     Upon entry of the home, Defendant Kirby Officers and Defendant State Officers aimed firearms at everyone inside, including the two minor children, Plaintiffs M.P. and J.G.

86.     Plaintiffs where psychologically harmed by the presence of plain-clothed officers and other officers with SWAT-like gear and firearms barging into the residence in the middle of the night.

87.     Plaintiffs were held at gunpoint, before and after being handcuffed, without regard to age, status, or reason.

14

88.     Defendants' unlawful conduct deprived Plaintiffs of feeling safe and secure in their home.

89.     Defendant Officers are trained police officers with hundreds of hours of firearm training among them.  They understand the difference between conducting a warrant during the day with a knock, and a no-knock warrant in the middle of the night.   Defendant Officers understood that their conduct was likely to cause psychological harm to Plaintiffs.

90.     Defendants   succeeded.   Plaintiffs   were   psychologically   harmed. Without time to process what had occurred, Plaintiffs thought they were about to endure imminent substantial harm or death.

91.     After having time to process what occurred, re-living the raid over and over, day to day, Plaintiffs realize that they could have been subject to imminent substantial   harm   or   death—especially   had   Defendant   Officers   construed   any movement or action by Plaintiffs as a threat.

92.     Defendants knew that Plaintiffs were not committing any crime but intended to cause psychological damage.  Defendants also caused property damage.

93.     Defendants' actions were excessive and without any lawful basis.

94.     Plaintiffs   suffered   emotional   injuries   and   pain,   mental   anguish, humiliation,   and   embarrassment,   in   addition   to   other   harms,   as   a   result   of Defendants' collective conduct.

**COUNT V**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment – Malicious Prosecution)**

95.   Plaintiffs incorporate herein all prior allegations.

96.   The elements of malicious prosecution are as follows:

97.   A criminal proceeding commenced against the Plaintiff;

98.   Defendant initiated or procured the proceeding;

99.   The proceeding was terminated in the Plaintiff's favor;

100.   The Plaintiff was innocent of the crime charged;

101.   The Defendant lacked probable cause to initiate the criminal proceeding;

102.   The Defendant acted with malice; and

103.   The Plaintiff suffered harm as a result.

104.   Defendant Officers filed a false report to the county prosecutor, charging Miller with having a gun on government property.

105.   The proceeding was terminated in Miller's favor because he did not have a real gun.

106.   Miller was innocent of the crime charged because he did not have a real gun.

107.   Defendant Officers lacked probable cause to initiate the criminal proceeding because they knew Miller did not have a real gun.

108.   Defendant Officers acted with malice by filing a false affidavit and obtaining a no-knock warrant.

109.   Plaintiffs suffered emotional injuries and pain, mental anguish, humiliation, and embarrassment, in addition to other harms, as a result of Defendants collected conduct.

## COUNT VI
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (First Amendment – Retaliatory Prosecution)

110.   Plaintiffs incorporate herein all prior allegations.

111.   Defendant Salvaggio sought in coordination with one or more Defendant Officers, all acting under color of law, and one or more Defendant Cities, maliciously induced the process to charge Plaintiff Miller with a frivolous criminal charge.

112.   Defendant Salvaggio personally knows Plaintiff Jack Miller. Defendant Salvaggio regularly communicated with other law enforcement officials and prosecutors about Jack Miller.

113.   Once Jack Miller filed a complaint against the Leon Valley Police Department—the agency Salvaggio was the then-chief of police for—Defendant Salvaggio made it his goal to go after Plaintiff Jack Miller and his family.  It did not matter that Plaintiff Miller had a constitutional right to file the complaint against the Leon Valley Police Department.

114.   Defendant Salvaggio worked in coordination with other local police departments to compile and disburse information about Plaintiff Miller, his activities, and his family.

115.   Plaintiff Miller arriving at Leon Valley's multi-use building with a fake firearm gave Defendant Salvaggio what he needed.  Defendant Salvaggio then coordinated with Defendants to facilitate obtaining a no-knock warrant and then executing the warrant.

116.   Following the execution of the warrant, Defendant Salvaggio held one or more meetings with prosecutors to learn what information prosecutors needed to initiate prosecution.

117.   Defendant Salvaggio, in a coordinated effort with one or more Defendant Officers and Defendant Cities, prepared information to produce a false narrative that Defendant Salvaggio knew was sufficient for prosecutors to initiate criminal prosecution against Plaintiff Miller.

118.   This adverse act was done in retaliation for Plaintiff Miller engaging in constitutionally protected conduct as described herein, and to prevent him from engaging in such conduct, specifically filing a complaint against the police.

119.   All of Defendant Officers' and Defendant Cities' adverse acts would deter a person of ordinary firmness from continuing to engage in filing complaints against the police in the future.

Defendant Salvaggio then used the charges to suggest to other local, state, and federal agencies that Plaintiff Miller was an agitator[1] that needed to be further investigated and prosecuted.

120.    Despite Defendant Salvaggio's extensive efforts to target Plaintiff Miller and his family, the charges were ultimately dismissed.  Defendant Salvaggio, in coordination with one or more Defendant Officers and Defendant Cities', made multiple attempts to have new charges filed or previously dropped charges refiled.

121.    Defendants' coordinated effort and conduct to have Plaintiff Miller prosecuted was done in retaliation and in an effort to prevent him from filing complaints against law enforcement agencies.

122.    Plaintiffs suffered emotional injuries and pain, mental anguish, humiliation, and embarrassment, in addition to other harms, as a result of Defendants' collected and chilling conduct.

### COUNT VII
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment – Retaliatory Prosecution)

123.    Plaintiffs incorporate herein all prior allegations.  Specifically for this County, Plaintiffs incorporate Paragraphs 112 through 120.

---

[1] Defendants describe Jack Miller and other First Amendment Auditors as "agitators" and attempt to associate them with individuals that commit mass murder and kill police officers.  Defendants lack any regard for Plaintiffs' protections afforded under the United States Constitution.

19

124.    Defendant Salvaggio sought in coordination with one or more Defendant Officers, all acting under color of law, and one or more Defendant Cities, maliciously induced the process to charge Plaintiff Miller with a frivolous criminal charge.

125.    Defendants' coordinated effort and conduct to have Plaintiff Miller prosecuted was done in retaliation for Plaintiff Miller engaging in constitutionally protected activity as a First Amendment auditor.

126.    Plaintiffs suffered emotional injuries and pain, mental anguish, humiliation, and embarrassment, in addition to other harms, as a result of Defendants' collected and chilling conduct.

## **COUNT VIII**
## **VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
## **(Failure to Intervene)**

127.    Plaintiffs incorporate herein all prior allegations.

128.    Each of the above counts in this suit named Defendants, under color of law, were either working in concert with one another to deter Plaintiff Miller from engaging in constitutionally protected activity

129.    Even if not all Defendant Officers acted in concert, none of the Defendant Officers intervened to stop the unlawful conduct of one or more of the acting Defendant Officers.

130.   Specifically, Defendant Officers Brooks, King, and Munoz were aware that Officer Rivera's affidavit for the warrant was false when it alleged that Plaintiff Miller had a real gun.   Defendant Officers Brooks, King, and Munoz had an opportunity to prevent the harm but failed to do so when they executed the warrant they knew was defective.   These officers acquiesced in the conduct.

131.   Defendant Officers Brooks, King, and Munoz failed again to intervene when they observed other officers holding Plaintiffs at gunpoint during the unlawful raid.  Defendant Officers had a reasonable opportunity to prevent the harm but failed to do so when they engaged in similar conduct or continued to execute the bad warrant.

132.   One or more Defendant Officers again failed to intervene when one or more of the Officers were aware of Defendant Salvaggio's efforts to initiate retaliatory prosecution against Plaintiff Miller.  One or more Defendant Officers had a reasonable opportunity to intervene and prevent the harm but failed to do when they either ignored Defendant Salvaggio's conduct or contributed to it by assisting him and other Defendant Officers in pursuing the retaliatory prosecution.

133.  Plaintiffs suffered emotional injuries and pain, mental anguish, humiliation, and embarrassment, in addition to other harms, as a result of Defendants' collected and chilling conduct.

## COUNT IX
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (Conspiracy)

134.   Plaintiffs incorporate herein all prior allegation

135.   Each of the above counts in this suit named Defendants conspired with one another to commit each count to deter Plaintiff Miller from engaging in constitutionally protected activity.

136.   Plaintiffs suffered harm as a result.

## COUNT X
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (Municipal Liability – Unlawful Policy / Failure to Train)

137.   Plaintiffs incorporate herein all prior allegations.

138.   A municipality is liable under 42 U.S.C. § 1983 if the acts that violated a person's right were undertaken pursuant to the municipality's policies and customs.

139.   Defendants Leon Valley and Kirby directly caused the constitutional violations suffered by Plaintiffs, and is liable for the damages caused as a result of the conduct of the individual Defendants. The conduct of the individual Defendant officers was a direct consequence of the policies and practices of Defendant City.

140.   At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and /or

customs developed, implemented, enforced, encouraged, and sanctioned by Defendant City, including the failure:

    a.  To adequately supervise and train its officers and agents, including individual Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers;

    b.  To properly and adequately monitor and discipline its officers, including individual Defendants; and

    c.  To adequately and properly investigate citizen complaints of police misconduct and instead, acts of misconduct were tolerated by the Defendant City. Defendant City has acted with deliberate indifference to the constitutional rights of the Plaintiffs. As a direct and proximate result of the acts as stated herein by each of the Defendants, each of the Plaintiffs' constitutional rights have been violated.

141.   This failure to supervise, discipline, or control its officers demonstrates deliberate indifference to the constitutional rights of the plaintiffs and is directly responsible for the individual defendants acting the way they did as outlined in this lawsuit.

142.   Further the de facto unwritten policy, procedure, or custom, described herein, including arresting individuals who engage in protected conduct for false reasons, demonstrates deliberate indifference to the constitutional rights of the

plaintiffs and is directly responsible for the individual defendants acting the way they did as outlined in this complaint.

143.   Defendant City of Leon Valley and Defendant Salvaggio have a history of unlawfully training and permitting officers to arrest individuals engaged in protected conduct. Defendant Salvaggio on several occasions has encouraged the arrest and prosecution of individuals exercising their first amendment rights.

144.   Defendant City's supervision of the defendant officers, was deficient as it to relates to excessive force, unlawful arrests, and unlawful searches and seizures. Defendant City made a deliberately indifferent choice to not provide adequate supervision of these officers to ensure that such actions are not repeated, and that is exactly why these defendant officers were enabled and in fact emboldened to violate the plaintiffs' Constitutional rights as outlined herein.

145.   As a proximate result of the unconstitutional acts and omissions of Defendant City, Plaintiffs were harmed and suffer damages for their physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment and pray for the following relief, jointly and severally, against all Defendants:

a. Declaratory judgment that Leon Valley's and Kirby's policies are unconstitutional;

b. Full and fair compensatory damages in an amount to be determined by a jury;

c. Punitive damages in an amount to be determined by a jury;

d. Reasonable attorney's fees and the costs and disbursements of this action; and

e. Any such other relief as appears just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable, pursuant to Fed. R. Civ. Pr. 38(b).

Respectfully Submitted,

**GRABLE GRIMSHAW MORA PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
brandon@ggm.law
**AUSTIN M. REYNA**
Texas State Bar No. 24118645
austin@ggm.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332

## <u>CERTIFICATE OF SERVICE</u>

I hereby affirm that on this 19th day of August, that the foregoing document was filed with the Court's CM/ECF electronic filing system, and that a copy of said document was served upon all parties of record, via electronic service.

<em>/s/ Brandon J. Grable</em>